IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 9, 2001

## MATTHEW STEPHEN POLIAK v. JAMES H. ADCOCK

**Appeal from the Circuit Court for Davidson County**
**No. 99C-1897     Barbara N. Haynes, Judge**

---

**No. M2000-02325-COA-R3-CV - Filed September 24, 2002**

---

This appeal involves a dispute between a father and his adult daughter's live-in boyfriend.  The boyfriend filed a personal injury suit against his girlfriend's father in the Circuit Court for Davidson County after the father assaulted him with a piece of two-by-four.  The father admitted that he had assaulted his daughter's boyfriend but asserted the defenses of self-defense, provocation, and defense of property.  In response to the boyfriend's motion for partial summary judgment, the trial court determined that the father had failed to produce evidence to substantiate any of these defenses.  The father perfected this appeal after the trial court certified its order as final in accordance with Tenn. R. Civ. P. 54.02.  We have determined that the trial court was correct when it determined that the father's evidence regarding the circumstances surrounding the assault could not, as a matter of law, support his affirmative defenses.  Accordingly, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Jay Norman, Nashville, Tennessee, for the appellant, James H. Adcock.

Joel H. Moseley, Sr., Nashville, Tennessee, for the appellee, Matthew Stephen Poliak.

## OPINION

### I.

James M. Adcock and his wife own a house in Nashville.  Their adult daughter, Anna Michelle Adcock-Butler, and her two children live with them.  Ms. Adcock-Butler's boyfriend, Matthew Poliak was a frequent visitor in the Adcock home.  Despite at least one run-in with Mr. Adcock in early 1998, Mr. Poliak moved his clothing and other personal effects into Mr. Adcock's house several months later and apparently began spending significant amounts of time there.  Even though Mr. Adcock was not pleased with Mr. Poliak's actions, he never directly opposed or protested Mr. Poliak's presence in his house after Mr. Poliak moved back in.

By mid-1998 Mr. Adcock decided he could not permit Mr. Poliak to live in his house any longer. On the afternoon of July 11, 1998, armed with a piece of two-by-four, Mr. Adcock entered his daughter's bedroom where he found Mr. Poliak lying alone on the bed. As Mr. Poliak began to arise from the bed, Mr. Adcock, without warning, struck him with the two-by four. He told Mr. Poliak that he was going to leave the house for a while and that he would kill Mr. Poliak if he was still there when he returned. Mr. Poliak sustained severe injuries and was taken by ambulance to the hospital.

In July 1999, Mr. Poliak sued Mr. Adcock for assault and battery in the Circuit Court for Davidson County, seeking $150,000 in compensatory damages and $150,000 in punitive damages. Mr. Adcock responded by admitting that he had struck Mr. Poliak with a two-by-four. He also asserted that he had been provoked and that he was acting in self-defense because Mr. Poliak was a younger and larger man. After taking Mr. Adcock's discovery deposition, Mr. Poliak moved for a partial summary judgment seeking dismissal of Mr. Adcock's affirmative defenses of provocation, self-defense, and protection of property. The trial court granted Mr. Poliak's motion because Mr. Adcock had failed to demonstrate that he would be able to provide material evidence to support his affirmative defenses. Mr. Adcock has now appealed.

## II.
### STANDARD OF REVIEW

The standards for reviewing an order granting a summary judgment are well-settled. A summary judgment is proper in virtually any civil case where the moving party demonstrates that no genuine issues of material fact exist and that it is entitled to a judgment as a matter of law. *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Armoneit v. Elliott Crane Serv.*, 65 S.W.3d 623, 627 (Tenn. Ct. App. 2001). Because a summary judgment involves an issue of law rather than an issue of fact, *Planters Gin Co. v. Federal Compress & Warehouse Co.*, 78 S.W.3d 885, 889 (Tenn. 2002), an order granting a summary judgment is not entitled to a presumption of correctness on appeal. *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002).

Appellate courts do not employ the standard of review in Tenn. R. App. P. 13(d) when reviewing an order granting a summary judgment. *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997); *Estate of Kirk v. Lowe*, 70 S.W.3d 77, 79-80 (Tenn. Ct. App. 2001). Rather, we determine for ourselves whether the moving party has satisfied the requirements of Tenn. R. Civ. P. 56. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cantrell v. DeKalb County*, 78 S.W.3d 902, 905 (Tenn. Ct. App. 2001). In this process, we must consider the evidence in the light most favorable to the nonmoving party and resolve all inferences in the nonmoving party's favor. *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 342 (Tenn. 2002); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001).

Litigants may use a motion for summary judgment to challenge their adversaries to put up or shut up on a critical issue in a case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). A moving party will be entitled to a summary judgment if it can demonstrate that the non-

moving party will be unable to prove an essential element of its case on which it will bear the burden of proof at trial. *Byrd v. Hall*, 847 S.W.2d 208, 213 (Tenn. 1993); *Solomon v. FloWarr Mgt., Inc.*, 777 S.W.2d 701, 706 (Tenn. Ct. App. 1989). Customarily, defendants employ this strategy either to negate an essential element of the plaintiff's claim or to establish an affirmative defense to the plaintiff's claim. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001). Though less common, plaintiffs may also use a summary judgment motion to test the sufficiency of an affirmative defense. 6 James W. Moore et al., *Moore's Federal Practice and Procedure* § 56.17[4] (2d ed. 1995); 10B Charles A. Wright et al., *Federal Practice and Procedure* § 2734, at 255-56 (3d ed. 1998) ("Federal Practice and Procedure"). Thus, a plaintiff may be entitled to a partial summary judgment striking an affirmative defense if it demonstrates, as a matter of law, that the defendant will not be able to substantiate one or more of its affirmative defenses. Federal Practice and Procedure § 2734, at 258-59.

Once a party seeking a summary judgment demonstrates that its motion complies with the requirements of Tenn. R. Civ. P. 56, the burden of going forward shifts to the non-moving party to demonstrate either that material factual disputes exist or that the moving party is otherwise not entitled to a judgment as a matter of law. *Nelson v. Martin*, 958 S.W.2d 643, 647 (Tenn. 1997); *Cantrell v. DeKalb County*, 78 S.W.3d at 905. Mere conclusory allegations will not suffice to create a material factual dispute. *Psillas v. Home Depot, U.S.A., Inc.*, 66 S.W.3d 860, 864 (Tenn. Ct. App. 2001). Non-moving parties may deflect a summary judgment motion challenging their ability to prove an essential element of their case by (1) pointing to evidence either overlooked or ignored by the moving party that creates a factual dispute, (2) rehabilitating evidence challenged by the moving party, (3) producing additional evidence that creates a material factual dispute, or (4) submitting an affidavit in accordance with Tenn. R. Civ. P. 56.07 requesting additional time for discovery. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Davis v. Campbell*, 48 S.W.3d 741, 747-48 (Tenn. Ct. App. 2001). A non-moving party who fails to carry its burden faces summary dismissal of the challenged claim or defense because, as our courts have repeatedly observed, the failure of proof concerning an essential element of a case renders all other facts immaterial. *Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993); *Strauss v. Wyatt, Tarrant, Combs, Gilbert & Milom*, 911 S.W.2d 727, 729 (Tenn. Ct. App. 1995).

### III.
### MR. ADCOCK'S AFFIRMATIVE DEFENSES

Mr. Adcock does not dispute that he assaulted Mr. Poliak with a two-by-four. However, he has undertaken to deflect liability for Mr. Poliak's injuries by asserting three affirmative defenses – provocation, self-defense, and defense of property. After taking Mr. Adcock's deposition, Mr. Poliak moved for a summary judgment on the ground that Mr. Adcock would be unable to prove the essential elements of these defenses at trial. Mr. Adcock responded by insisting that the testimony he gave in his deposition is sufficient to support each of his defenses.

## A.
### SELF-DEFENSE

Self-defense is a complete defense to a civil action for battery. *Dent v. Holt*, No. 01A01-9302-CV-00072, 1994 WL 503891, at *1 (Tenn. Ct. App. Sept. 16, 1994) (No Tenn. R. App. P. 11 application filed). Thus, persons who can prove that they were acting in self-defense when they assaulted another person will be absolved from liability for the injuries they may have caused.

The elements of the defense are essentially the same in civil and criminal cases. *Shelby Ins. Co. v. Mathes*, No. E2000-00186-COA-R3-CV, 2000 WL 1035949, at *2 (Tenn. Ct. App. July 27, 2000) (No Tenn. R. App. P. 11 application filed); Restatement (Second) of Torts § 63 (1965). The defense reflects the principle that persons are entitled to defend themselves when they reasonably believe they are about to be seriously injured. Restatement (Second) of Torts §§ 63, 65 (1965); Tenn. Code Ann. § 39-11-611(a) (1997). However, persons are entitled to use force to defend themselves only as long as the threat of injury continues, *Sneed v. Englert*, Hamilton Law, 1984 Tenn. App. LEXIS 2657, at *3-4 (Tenn. Ct. App. Feb. 7, 1984) (No Tenn. R. App. P. 11 application filed), and may use only as much force as is necessary to defend themselves. *McLemore v. Moore*, 2 Tenn. Cas. (Shannon) 142, 143 (1876); *McCain v. Vaughn*, No. 02A01-9707-CV-00154, 1999 WL 95974, at *2 (Tenn. Ct. App. Feb, 26, 1999) (No Tenn. R. App. P. 11 application filed); *Dent v. Holt*, 1994 WL 503891, at *2.

The Restatement provides fact-finders with factors for determining whether the amount of force used by a person acting in self-defense was reasonable. These factors include: (1) the amount of force the defender exerted, (2) the means or the object by which the defender applied the force, (3) the manner or method used by the defender to apply the force, and (4) the surrounding circumstances under which the defender applied the force. Restatement (Second) of Torts § 70 cmt. b. Using similar factors, this court has upheld a trial court's conclusion that a person who threw an aggressor to the ground and repeatedly hit him had used more force than was reasonably necessary. *McCain v. Vaughn*, 1999 WL 95974, at *2.

According to Mr. Adcock, he and Mr. Poliak had at least one previous confrontation. However, even though Mr. Poliak is the younger and larger man, there is no evidence in the record that Mr. Poliak had ever attempted to intimidate or harm Mr. Adcock. Nonetheless, Mr. Adcock armed himself with a two-by-four and entered the room where Mr. Poliak was sleeping with the settled intention to strike Mr. Poliak over the head to dissuade him from resisting Mr. Adcock's ultimatum to leave his house. When Mr. Adcock entered the room cursing at Mr. Poliak, Mr. Poliak's only actions before Mr. Adcock struck him were to mumble something and to begin to get out of bed. Viewing Mr. Adcock's own testimony in a light most favorable to him, the only conclusions that a reasonable person can draw are that on the afternoon of July 11, 1998, Mr. Adcock had no reasonable basis to fear that Mr. Poliak was about to injure him seriously and that Mr. Adcock's attack on Mr. Poliak was clearly disproportionate to Mr. Poliak's conduct. Accordingly, the trial court correctly held that Mr. Poliak was entitled to a summary judgment striking Mr. Adcock's defense of self-defense because Mr. Adcock had failed to demonstrate that he would be able to substantiate this defense at trial.

## B.
### PROVOCATION

In Tennessee, provocation is a theory used to mitigate damages rather than an affirmative defense. *Dent v. Holt*, 1994 WL 503891, at *2. It does not completely absolve a defendant from liability like the defense of self-defense does. Instead, it enables defendants to reduce the amount of damages a plaintiff receives by demonstrating that the plaintiff provoked the defendant into the injury-causing conduct. *Daniel v. Giles*, 108 Tenn. 242, 243, 66 S.W. 1128, 1128 (1901); *Jacaway v. Dula*, 15 Tenn. (7 Yer.) 82, 83 (1834).

The theory of provocation stems from the belief that persons should not be permitted to benefit from their own wrongful conduct. *Dent v. Holt*, 1994 WL 503891, at *1. It arises in circumstances where the plaintiff's conduct is so provocative that it "heat[s] the blood or arouse[s] the passion of a reasonable man." *Daniels v. Giles*, 108 Tenn. at 244, 66 S.W. at 1129. However, a person attempting to mitigate damages by asserting that he or she was provoked must demonstrate (1) that the plaintiff's conduct was truly provocative, (2) that his or her response to the provocation was not wholly disproportionate to the offense offered, *Jenkins v. Hankins*, 98 Tenn. 545, 554-55, 41 S.W. 1028, 1030 (1897); *Chambers v. Porter*, 45 Tenn. (5 Cold.) 273, 282 (1868), and (3) that not enough time had elapsed for the effect of the provocative conduct to dissipate. *Lovelace v. Miller*, 43 So. 734, 736 (Ala. 1907); *Bond v. Williams*, 214 S.W. 202, 204 (Mo. 1919).

The courts have not laid down a definitive test for determining whether a plaintiff's actions are sufficiently provocative to mitigate a defendant's forceful reactions to them. These inquiries are fact-specific. Thus, whether the plaintiff's conduct was truly provocative and whether the defendant's response was disproportionate must be determined on a case-by-case basis in light of all the circumstances.

Mr. Adcock claims that Mr. Poliak provoked the July 11, 1998 assault by continuing to live in his home after he had asked Mr. Poliak to leave. As we understand Mr. Adcock's testimony, Mr. Poliak had been living in his house for a number of weeks, if not months, before July 11, 1998. While a reasonable person could be upset by the presence of an unwanted guest in his or her home, the presence of such a guest, especially one who has been invited into the home by one of the other persons residing there, is not the sort of conduct that heats the blood or arouses the passions of reasonable persons to the point where they feel compelled to assault the unwanted guest with a two-by-four. Thus, the trial court properly determined that Mr. Poliak's mere presence in Mr. Adcock's home was not the sort of provocative conduct that provides a basis for claiming provocation as a justification for mitigating damages.

The events of July 11, 1998 likewise fail to provide a factual basis for a provocation argument. Viewing the evidence in the light most favorable to Mr. Adcock, Mr. Poliak did nothing on July 11, 1998 to provoke Mr. Adcock's violent attack. In fact, Mr. Adcock essentially admits that he had decided to hit Mr. Poliak with the two-by-four before he entered the room. As far as this record shows, Mr. Poliak's actions in response to Mr. Adcock entering his room were to mumble something and to begin to get out of bed. No reasonable person would view these actions as being

so provocative that they warranted being struck on the head with a two-by-four. Accordingly, there is no evidence in the record to support Mr. Adcock's claim that he was provoked into attacking Mr. Poliak with a two-by-four on July 11, 1998.

## C.
### DEFENSE OF PROPERTY

Property owners may use as much force as is reasonably necessary to prevent another from unlawfully coming onto their property or to remove another who is trespassing on their property. Tenn. Code Ann. § 39-11-614(a) (1997); *Brookside-Pratt Mining Co. v. Booth*, 100 So. 240, 242 (Ala. 1924); *Hamilton v. Howard*, 28 S.W.2d 7, 10 (Ky. 1930); *Bailey v. Ferguson*, 183 S.E. 275, 275 (N.C. 1936). To raise the defense of property defense, a property owner must prove (1) that the plaintiff was trespassing on his or her property, (2) that he or she reasonably believed that the force used on the trespasser was necessary to get the trespasser off or to keep the trespasser off his or her property, and (3) that he or she first asked the trespasser to leave and that the trespasser refused or that he or she reasonably believed that any such attempt would have been useless or would have caused substantial harm. Restatement (Second) of Torts § 77 (1965). Property owners can never use force that endangers human life or inflicts serious bodily harm. *State v. McCombs*, 253 S.E.2d 906, 911 (N.C. 1979); *see also State v. Buell*, No. 01C01-9607-CC-00292, 1997 WL 677947, at *3 n.7 (Tenn. Crim. App. Nov. 3, 1997) (No Tenn. R. App. P. 11 application filed).

Mr. Adcock's testimony in his deposition fails to substantiate any of the ingredients of a defense of property defense. Mr. Poliak was not an uninvited guest in Mr. Adcock's house. He was living there at the invitation of Mr. Adcock's adult daughter, who was a resident of the home. After his daughter invited Mr. Poliak to live with her, Mr. Adcock did not express dissatisfaction about Mr. Poliak's presence. His silence over a period of months, as a matter of law, must reasonably be construed as permission for Mr. Poliak to remain in the house. Restatement (Second) of Torts § 892 (1965) (stating that inaction can be construed as consent if the circumstances would make a reasonable person believe that he or she had consent to be on the property).

Similarly, Mr. Adcock's testimony does not demonstrate that striking Mr. Poliak with a two-by-four was immediately necessary to prevent or terminate Mr. Poliak's trespass or that the assault did not cause serious bodily harm. Months earlier, Mr. Adcock had ordered Mr. Poliak out of the house when he discovered Mr. Poliak in bed with his daughter and granddaughter. Mr. Poliak had complied with this demand making further force or threats of force unnecessary. Accordingly, the record provides no basis for concluding that Mr. Adcock was required to resort to violence on July 11, 1998 to remove Mr. Poliak from his house. There is certainly no factual justification for seriously injuring Mr. Poliak. If Mr. Adcock wanted Mr. Poliak to leave his house on July 11, 1998, he should have asked him to leave. The circumstances as described by Mr. Adcock do not provide a justification for using force to defend his house. Accordingly, the trial court properly concluded that Mr. Adcock would have been unable to substantiate a defense of property defense had this case gone to trial.

**IV.**

We affirm the partial summary judgment foreclosing Mr. Adcock's affirmative defenses as a matter of law and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to James H. Adcock and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE